EOD
09/10/2026

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MICHAEL R. MANN** | § | |
| xxx-xx-9032 | § | Case No. 26-10370 |
| **and DOMENICA R. MANN** | § | |
| xxx-xx-6453 | § | |
| P. O. Box 56, Kirbyville, TX 75956 | § | |
| | § | |
| Debtors | § | Chapter 13 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon hearing of the Motion for Relief from Automatic Stay Against Real Property filed by Arva and Susan Butler (collectively, the "Movants"), in the above-referenced Chapter 13 case, the Court issues the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014.[2]

### *FINDINGS OF FACT*

1. On October 25, 2025, the Movants sold to the Debtors, Michael Mann and his spouse, Domenica Mann (the "Debtors") certain improved real property composed of three tracts located at 332 Private Road 8070, Kirbyville, Jasper County, Texas (the "Property") in a seller-financed transaction. The tracts comprising the Property were conveyed by a warranty deed with a retained vendor's lien.

2. On that same date, the Debtors each executed a promissory note in the original principal amount of $269,000.00 in favor of the Movants to finance the purchase.

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

[2] Items identified herein as findings of fact may also be construed to be conclusions of law and are adopted as such. Items identified herein as conclusions of law may also be construed to be findings of fact and are adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

3. A deed of trust executed by the Debtors (the “Deed of Trust”) secured the payment of the promissory note by creating a lien in favor of the Movants against the Property. The Deed of Trust was subsequently recorded in Volume 1398, Page 252 *et seq*. in the real property records of Jasper County, Texas.

4. Controversies began to arise by and among the parties on various issues almost immediately.

5. By December 2025, the Movants had sent to Debtors a demand letter and a notice of intention to accelerate the unpaid principal balance of the note.

6. The Movants sought foreclosure under the Deed of Trust primarily because of the Debtors’ alleged failure to fulfill their obligation to protect the Movants’ interest in the Property by procuring and tendering to the Movants an in-force casualty insurance policy covering the premises that named the Movants as a loss-payee.

7. The only evidence tendered at the stay hearing that pertained to the insurance issue was a “Texas Collateral Protection Insurance Disclosure” arising from the sale closing that identified the Debtors as the borrowers, the Movants as the lenders, and which provided, *inter alia*, notice to the Debtors of their obligation to insure the improvements constituting the collateral against a casualty loss, with the Movants to be named as loss-payees under any such policy. It further contained a reminder that the Debtors were obligated to provide to Movants a copy of that policy and proof that the policy premiums had been paid. This notice was acknowledged by the signatures of the Debtors.

8. No evidence was presented at the stay hearing to demonstrate that the Debtors had actually procured a casualty insurance policy on the Property that met the protection requirements set forth in the “Texas Collateral Protection Insurance Disclosure.”

9. On the morning of February 3, 2026, Lisa Olds, as the Substitute Trustee under the Deed of Trust, exercised the power of sale under the Deed of Trust and she conducted and completed a non-judicial foreclosure sale upon the Property at which the Substitute Trustee accepted the $268,500.00 credit bid of the Movants and awarded the Property to them.

10. The Substitute Trustee on that same date executed a Foreclosure Sale Deed to the Movants and the Foreclosure Sale Deed was properly recorded that day in the

Jasper County Deed Records.[3]

11. Included among the recitals contained in the Foreclosure Sale Deed, the Substitute Trustee stated that:

(a) the Trustee was exercising the power of sale contained in the Security Instrument (the Deed of Trust);

(b) written notice of default with demand for payment and a notice of intention to accelerate the principal balance (and of the opportunity to cure to avoid such acceleration) was served by certified United States Mail, postage prepaid, upon each Debtor on December 10, 2025;

(c) a notice of acceleration and notice of the foreclosure sale and how it would be conducted was served by certified United States Mail, postage prepaid, upon each Debtor on January 9, 2026;

(d) written notice of the time, place, date, and terms of the public foreclosure sale was posted at the Jasper County Courthouse and filed with the county clerk at least 21 days preceding the sale date;

(e) written notice of the time, place, date and terms of the foreclosure sale was served by certified U.S. mail, postage prepaid, upon each Debtor at least 21 days preceding the sale dated; and that

(f) in consideration of the highest bid by the Movants, tendered as a credit bid against the amounts owed to Movants as the current lenders and, pursuan to the authority granted to her by the Security Instrument, the Substitute Trustee sold and conveyed the Property to the Movants.[4]

12. Following the foreclosure sale, however, the Debtors remained in possession of the Property.

13. The Movants acknowledged at the hearing that the Debtors had tendered to them

---

[3] Movants' Ex. 1.

[4] *Id.* at p. 3.

the promissory note payment of $2,000.00 per month in December 2025, as well as in January 2026.

14. As the parties continued to negotiate with each other in the post-foreclosure period, the Debtors tendered monthly payments of $2,000.00 to the Movants for February, March and April, 2026. The parties dispute whether to characterize those payments as post-foreclosure mortgage payments or proper rental payments for the Debtors' continued occupation of the land in the post-foreclosure period.

15. When the parties failed in their efforts to reach a resolution of their dispute by mediation and other negotiations in the post-foreclosure period, the Movants began the process under governing Texas law by which to regain actual possession of the Property from the Debtors.

16. On July 6, 2026, the Justice Court for Precinct Three of Jasper County, Texas conducted a bench trial on the Movants' Petition for Forcible Detainer[5] under which the Movants sought and received a judgment against the Debtors which entitled the Movants to immediate possession of the Property, plus court costs (the "Possession Judgment").[6]

17. The Possession Judgment informed the Debtors of their right to appeal the entry of the Possession Judgment "by filing a bond, making a cash deposit, or filing a Statement of Inability to Afford Payment of Court Costs within five (5) days after this Judgment is signed."[7]

18. The Possession Judgment further specified that, should the Debtors wish to appeal the entry of the Possession Judgment, the appeal bond required to be paid by the

[5] "A forcible detainer suit is a special proceeding designed to provide a speedy, summary, and inexpensive determination of the right to immediate possession of real property. A detainer action in justice court may assert only a claim for possession and a claim for rent within the justice court's jurisdiction. To facilitate the purpose of the detainer action, the only issue the justice court may adjudicate is the right to actual possession of the premises. No other issues, controversies or rights of the parties related to the property, including title, can be adjudicated in a detainer suit." *AAA Free Move Ministorage, LLC v. OIS Invs., Inc.*, 419 S.W.3d 522, 526 (Tex. App.—San Antonio 2013, pet. denied)(citations omitted).

[6] Movants' Ex. 2.

[7] *Id.* at p. 2.

Debtors would be in the amount of $10,000.00.[8]

19. The Possession Judgment further stated that, pending any such appeal, the Debtors would be required to pay a monthly rental amount of $2,000.00 for the Property.[9]

20. The Debtors sought to pursue an appeal of the Possession Judgment by filing a Statement of Inability to Afford Payment of Court Costs or Appeal Bond with the Justice Court on July 13, 2026 in lieu of an appeal bond. The Movants filed a Contest to that Statement one day later pursuant to Texas law.

21. On July 22, 2026, the Debtors filed a Notice of Appeal of the Possession Judgment with the County Court of Jasper County.[10]

22. On that same date, July 22, 2026, the Justice Court tried the Movants' Contest to the Statement of Inability filed by the Debtors and found the Statement of Inability to be deficient under Texas law.

23. Having found that the Debtors had failed to sustain their burden of proof to establish their alleged inability to pay court costs or post an appeal bond as otherwise required by state law, the Justice Court sustained the Movants' Contest to the Statement of Inability and ordered the Debtors, in furtherance of their appeal to the County Court, within five (5) days to either: (1) post a cash appeal bond in the amount of $10,000.00; or (2) deposit the sum of $10,000.00 into the registry of the Justice Court.[11]

---

[8] *Id.*

[9] *Id.*

[10] The County Clerk of Jasper County subsequently notified the Debtors and the Movants that no appeal had been filed in, or accepted by, that office due to the fact that the amount of money required for the appeal had not been tendered.

[11] *Id.* at pp. 3-5 regarding this *Order Sustaining Plaintiffs' Contest to Defendants' Statement of Inability to Afford Payment of Court Costs or Appeal Bond*. The original contest order erroneously quantified the cash deposit option as only a $2,000 obligation which the Justice Court quickly corrected to the intended $10,000 amount with its *Order Nunc Pro Tunc Correcting Order Sustaining Plaintiffs' Contest to Defendants' Statement of Inability to Afford Payment of Court Costs or Appeal Bond*. *See* Movants' Ex. 4. Though the Debtors framed this as some type of act of subterfuge by the Justice Court, it was clearly a correction of an obvious scrivener's error in the contest order. The original Possession Judgment identified the appeal bond amount as $10,000 and the language utilized by the original contest order was clearly communicating that the Debtors could choose the method of compliance — not a

24. In furtherance of other state court litigation initiated at some undisclosed time by the Debtors against the Movants and the Substitute Trustee before the 1st Judicial District Court in and for Jasper County, Texas,[12] that district court conducted a hearing on July 22, 2026 and on that date denied the Plaintiffs' [i.e., Debtors'] Application for Temporary Injunction in that cause of action.

25. The state district court specifically found in the temporary injunction hearing that "the Plaintiffs have failed to establish: (1) a probable right to the relief sought; (2) a probable, imminent, and irreparable injury in the interim before a trial on the merits; and (3) the absence of an adequate remedy at law" and awarded reasonable attorney's fees to the Movants.[13]

26. Five days later, on July 27, 2026, the Debtors, Michael Mann and Domenica Mann, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in this Court. That petition date was two days prior to the deadline[14] by which the Debtors would have been required to post a $10,000.00 appeal bond or make a registry deposit of the same amount in order to stay the effectiveness of the Possession Judgment pending appeal.

27. On July 30, 2026, after having an initial motion dismissed for procedural defects, the Movants, Arva L. Butler and Susan Butler, re-filed a Contested Motion for

---

waiver of the previously-established $10,000 amount. The Debtors' submission of the $2,000.00 amount did not preclude that correction.

[12] That state court action, now removed to this Court by the Debtors, was pending in the 1st Judicial District under cause no. 42104 and was captioned *Michael Mann and Domenica Mann v. Arva Butler, Susan Butler, and Lisa Olds, in her capacity as Substitute Trustee*. The asserted causes of action in the Debtors' Third Amended Petition filed on July 10, 2026 are: (1) common law fraud and fraudulent inducement in the purchase of the property; (2) statutory fraud arising from misrepresentations in the purchase of the property; (3) DTPA violations due to Defendants' nondisclosures pertaining to the purchase of the property; (4) civil conspiracy by the Defendants "to manufacture a technical default and wrongfully dispossess Plaintiffs;" and (5) wrongful foreclosure.

[13] Movants' Ex. 5. That state court litigation was removed to this Court by the Debtors on the day after the filing of the Chapter 13 petition.

[14] Because Rule 4 of the Texas Rules of Civil Procedure states, in relevant part, that "Saturdays, Sundays, and legal holidays shall not be counted for any purpose in any time period of five days or less in these rules," the computation of the deadline was extended to seven (7) literal calendar days from the date that the Justice Court entered its order sustaining the Movants' Contest to the Debtors' Statement of Inability — vez., July 29, 2026.

Relief from Automatic Stay Against Real Property (the "Motion").[15]

28. An objection to the relief requested in the original Motion was filed by the Debtors on July 30, 2026 and it was allowed to stand as an objection to the re-filed corrected motion.

29. In their motion, the Movants assert that the successful completion of a non-judicial foreclosure sale in February 2026 divested the Debtors of their interests in the Property under Texas law at that time. Thus, the Property could not, according to the Movants, have become property of the bankruptcy estate when the Debtors filed their Chapter 13 petition on July 27, 2026.

30. The Movants accordingly are seeking relief from this Court through the entry of an order [viz. a "comfort order"] declaring that the automatic stay arising under § 362 of the Bankruptcy Code was therefore inapplicable to the Property and merits the granting of their Motion.[16]

## *CONCLUSIONS OF LAW*

1. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1334 and 157(b), and 11 U.S.C. § 362. This Court has personal jurisdiction over the parties.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

3. 11 U.S.C. § 362(d) states as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay —
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

---

[15] A corresponding Request for Emergency Hearing filed by the Movants with regard to the Motion was denied, but the Court granted the Movants an expedited hearing on the Motion which was conducted on August 20, 2026 in Beaumont.

[16] In the alternative, the Movants seek relief from the automatic stay under § 362(d)(1) and (d)(2) if the Court finds the automatic stay to be applicable.

> (2) with respect to a stay of an act against property under subsection (a) of this section, if —
>
> > (A) the debtor does not have an equity in such property; and
> > (B) such property is not necessary to an effective reorganization.

4. In stay relief litigation, the party opposing stay relief, usually the debtor, has the ultimate burden of persuasion (or the risk of non-persuasion) as to all stay issues except the existence of equity pursuant to 11 U.S.C. § 362(g). However, the party requesting relief from the stay must sustain an initial burden of production or going forward with the evidence to establish that a *prima facie* case for relief exists before the respondent is obligated to go forward with its proof. *See generally, In re Kowalsky,* 235 B.R. 590, 594 (Bankr. E.D. Tex. 1999) and cases cited therein.

5. The Bankruptcy Code defines "property of the estate" as including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

6. "The Supreme Court has emphasized that bankruptcy law is not itself a source of property rights. It functions to adjust pre-existing property rights as defined by extrinsic state or federal law." *Zayler v. Dep't of Agric. (In re Supreme Beef Processors, Inc.),* 468 F.3d 248, 255 (5th Cir. 2006) (*citing Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979)).

7. "To determine whether something is property of the bankruptcy estate, a court must look to both state and federal law. Specifically, a debtor's property rights are determined by state law, while federal bankruptcy law applies to establish the extent to which those rights are property of the estate." *Croft v. Lowry (In re Croft*), 737 F.3d 372, 374 (5th Cir. 2013).

8. The issue of whether the Property constitutes property of the bankruptcy estate of these Debtors is determined by whether the Debtors held any legal or equitable interest in the Property on the date that the bankruptcy petition was filed. *In re Singh Bros Express LLC*, 667 B.R. 885, 898 (Bankr. W.D. Wash. 2025) ["Whether the bankruptcy estate has an interest in property is determined by looking at the debtor's legal and equitable property rights on the date of the bankruptcy filing, as

established under state law."]. In this instance, that determination is governed by Texas law.

9. In Texas, "[w]hen a borrower executes a deed of trust, the legal and equitable interests in property are severed." *Williams v. Nationstar Mortg., LLC*, 349 S.W.3d 90, 94 (Tex. App.–Texarkana 2011, pet. denied). Upon such execution, "the mortgagor retains legal title and the mortgagee holds the equitable title." *Flag–Redfern Oil Co. v. Humble Exploration Co.*, 744 S.W.2d 6, 8 (Tex. 1987).

10. Upon the completion of a non-judicial foreclosure sale that is conducted in accordance with state law, when a trustee accepts a winning bid pursuant to a power of sale contained in a deed of trust, equitable title is transferred to the purchaser "so as to give [such] purchaser superior rights at the time that the actual sale event occurs [and] not when follow-up documentation is completed, delivered, and recorded." *Jones v. Wells Fargo Bank* (*In re Jones*), 573 B.R. 665, 672 (Bankr. N.D. Tex. 2017)(parentheses omitted).[17]

11. The conveyance of the legal title to the Property to the Movants was accomplished on the foreclosure date when the Substitute Trustee executed and recorded the Foreclosure Sale Deed. *See Olivares v. Nix Trust*, 126 S.W.3d 242, 246 (Tex. App.—San Antonio 2003, pet. denied) ["In executing the foreclosure deed, the trustee merely effects the transfer of legal title from the debtor to the foreclosure purchaser."].

12. The execution and filing of the Foreclosure Sale Deed, thereby restoring full title to the Property to the Movants, occurred on February 3, 2026 — 175 days before the filing of the Debtors' bankruptcy petition.

13. Thus, because the Debtors' rights and interests in the Property had been extinguished by operation of state law at the time of the filing of the Debtors' bankruptcy petition, the Property never became property of the Debtors' bankruptcy estate,[18] nor did the Property ever fall under the protection of the

---

[17] "Note that in Texas, a mortgagor does not have redemption rights after the time of an actual foreclosure sale and, additionally, a sale under a deed of trust is not subject to a requirement of judicial confirmation." *Jones*, 573 B.R. at 671 (citing *Scott v. Dorothy B. Schneider Estate Trust*, 783 S.W.2d 26, 28 (Tex. App.–Austin 1990, no writ) and TEX. PROP. CODE § 51.002).

[18] *Matter of Boyd*, 11 F.3d 59, 61 (5th Cir. 1994)["Having no viable interest in the Property at the time the Chapter 13 petition was filed, [the debtor] conveyed nothing to his bankruptcy estate."].

automatic stay.[19]

14. This conclusion at this stage of the proceeding is not altered by the fact that the Debtors have initiated litigation against the Movants with claims for wrongful foreclosure and/or claims to set aside the Trustee's Foreclosure Sale Deed.

15. First of all, "under Texas law, recitals in a substitute trustee's deed, reciting compliance with all conditions of the deed of trust, constitutes *prima facie* evidence of a valid foreclosure sale and gives rise to a rebuttable presumption of validity." *Wood v. Bank of America*, 2015 WL 2378958, at *12 (N.D. Tex. Apr. 23, 2015)(citing *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983).

16. Secondly, though admittedly no final trial on the merits of those claims has yet been conducted, no legal determination has yet been issued by any court that gives any credence to the legitimacy of the Debtors' litigation allegations.

17. Certainly those litigation claims themselves constitute property of the bankruptcy estate, but the mere existence of those allegations by the Debtors do not control whether the Property itself became an asset of the bankruptcy estate on the petition date.

18. The characterization of what constitutes property of the bankruptcy estate "is determined by examining the nature of the asset on the date the bankruptcy petition was filed." *In re Jacobs*, 662 B.R. 376, 385 (Bankr. N.D. Okla. 2024). As the *Jacobs* court observed:

> the Court's authority in this matter is constrained by three specific provisions of the Bankruptcy Code. Section 541 exhaustively specifies the criteria that determines whether property of a debtor will become part of the bankruptcy estate on the date of filing the petition. The statute does **<u>not</u>** give courts discretion to include or exclude property based on

---

[19] *Singh Bros Express,* 667 B.R. at 896 ["property that is not property of the estate is not protected by the automatic stay]; *In re Applewhite*, 106 B.R. 468, 470 (Bankr. S.D. Miss. 1989)["Because a mortgagor-debtor is divested of all legal and equitable title to real property at the conclusion of a foreclosure sale [under Mississippi law], the automatic stay resulting from a subsequent bankruptcy filing does not apply to the successful bidder whether or not the Trustee's Deed has been delivered or recorded."].

equitable considerations.[20]

19. On the petition date in this case, the Debtors had been completely dispossessed of any interest in the Property under the processes prescribed under Texas law due to the completion of a non-judicial foreclosure sale and the execution and recordation of a trustee's deed to the winning bidder at that sale.

20. On the petition date in this case, the parties had litigated the issue of the right to immediate possession of the Property and the assigned court with exclusive jurisdiction under Texas law determined that the Movants, as the purchasers at that foreclosure sale, were entitled to actual and immediate possession of the Property. The Debtors elected not to pursue an appeal of that decision by choosing to forego compliance with the established statutory appellate prerequisites.

21. On the petition date in this case, the Debtors had initiated litigation in the 1st Judicial District Court in and for Jasper County, Texas under which, in part, they had been ,challenging the legitimacy of the non-judicial foreclosure sale and had sought injunctive relief to preclude the Movants from taking any further action to obtain exclusive possession of the Property.

22. Thus, the Debtors were presented with the opportunity to set forth the crux of their evidence before a court of general jurisdiction — the 1st Judicial District Court — during the temporary injunction hearing as they sought to stop Movants from further exercising their enforcement remedies after the foreclosure. Upon consideration of the evidence presented, the state district court denied the request and in its decision clearly found the evidentiary presentation supporting the Debtors' allegations to be lacking.[21]

23. After having lost in their efforts to obtain temporary injunctive relief from the state district court, the Debtors elected to file their joint petition in this Court, utilizing § 362 to obtain the injunctive relief against the Movants that had just been denied them by the state district court.

24. The Debtors are certainly free to pursue any type of legal remedy available to them in various venues. However, it still remains that, as of the petition date, the validity of the February foreclosure sale and the resulting trustee's deed remained

---

[20] *Id.* (emphasis added).

[21] *See supra* finding #24 including the granting of an award of attorneys' fees to the Movants.

intact, and the Debtors' rights and interests in the Property had been extinguished by operation of state law.[22]

25. Thus, because the Debtors held no legal or equitable interest in the Property under Texas law on the date the bankruptcy petition was filed, the Property does not constitute property of the bankruptcy estate and the automatic stay is not applicable to the Property.

26. To effectuate appropriate relief based upon that conclusion, the Movants' Motion for Relief from Automatic Stay will be granted for cause under § 362(d)(1).[23]

Signed on 09/10/2026

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE
Acting By Designation in the Absence of
Joshua P. Searcy, United States Bankruptcy Judge

[22] This includes any possible interest attributable to the Debtors' continued possession of the Property. While a bare possessory interest might arguably still be in existence, that "interest" is clearly inferior and subject to the absolute possessory rights held by the Movants as the purchasers at the foreclosure sale. Indeed, any such interest was arguably extinguished when the Justice Court entered its Possession Judgment in favor of the Movants on July 6, 2026 — 21 days prior to the petition date — that awarded exclusive possession of the Property to the Movants.

[23] Because relief from the automatic stay is granted under § 362(d)(1), the Court need not conduct any analysis under §362(d)(2).